UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HERMAN E. TALMADGE, JR. | ) | CASE NO. 14-50312-wlh |
| | ) | |
| Debtor. | ) | |
| | ) | |

**RESPONSE TO LIMITED OBJECTION TO SELL FREE AND CLEAR OF LIENS UNDER SECTION 363(F)** *MOTION FOR AUTHORITY TO SELL 121 ACRE TRACT FREE AND CLEAR OF LIENS AND PROVIDE DISBURSEMENT OF FUNDS*

Secured Creditor Cadence Bank, N.A., successor by merger to State Bank and Trust Company, ("Cadence") hereby files this response to Limited Objection to Motion to Sell Free and Clear of Liens Under Section 363(f) *Motion for Authority to Sell 121 Acre Tract Free and Clear of Liens and Provide Disbursement of Funds* filed by Henry County Tax Commissioner (ECF No. 377) and respectfully shows the court as follows:

1. On May 1, 2018, the Chapter 11 Trustee filed a Chapter 11 Plan of Reorganization that was subsequently amended (the "Plan") (ECF No. 266). The Plan incorporated the Third Amendment to the Plan that was filed on September 19, 2018 (the "Third Amendment" which is attached hereto as Exhibit "A") (ECF No. 318) and this Court confirmed the Plan by Order dated October 9, 2018 (ECF No. 329).

2. On February 22, 2019, Herman E. Talmadge. Jr. ("Debtor") filed a Motion for Authority to Sell 121 Acre Tract Free and Clear of Liens and Provide Disbursement of Funds (ECF No. 365) (the "Motion"). Debtor's Motion was filed in accordance with the confirmed Plan.

3. The Third Amendment states that if the 121 Acre Tract is not sold by private sale within the stated timeframe, it will be sold at auction free and clear of liens and the liens will attach to the sale proceeds. The Third Amendment also specifically provides for how the proceeds of the sale of the 121 Acre Tract will be disbursed. Section 5.3.B of the Third Amendment states that the first level of distribution of funds will go toward closing costs, **"ad valorem taxes specifically assessed against the 121 Acre Tract,"** and the federal tax lien claim against Herman E. Talmadge, III. Section 5.3.C provides the second level of distribution, Cadence's secured claim in the amount of $1,325,000.00. Section 5.3.D provides the third level of distribution, Cadence's unsecured claim in the amount of $542,616.03. The remaining proceeds are then to be paid to the owners of the 121 Acre Tract in accordance with their ownership interest.

4. On April 22, 2019, Henry County Tax Commissioner (the "Commissioner") filed its Limited Objection to Motion to Sell Free and Clear of Liens Under Section 363(f) *Motion for Authority to Sell 121 Acre Tract Free and Clear of Liens and Provide Disbursement of Funds* (ECF No. 377) (the "Limited Objection"). In its Limited Objection, the Commissioner asserts that the proceeds from the auction should be used not only to pay ad valorem taxes owed on the 121 Acre Tract, but also to pay any other taxes that are owed to the Commissioner on any other property of the estate.

5. Cadence objects to payment to the Commissioner of any ad valorem taxes other than that appropriately owed on the 121 Acre Tract, because it would be in violation of the confirmed Plan, specifically under Section 5.3.B of the Third Amendment. The Third Amendment does not provide for payment of ad valorem taxes on any property other than

2

the 121 Acre Tract. Indeed, as set forth above, other than payment of the ad valorem taxes attributable to the 121 Acre Tract, none of the remaining funds generated from an auction of the 121 Acre Tract are available to pay any other outstanding ad valorem taxes.

6. The Commissioner received notice of the Plan and its subsequent amendments and had an opportunity to raise objections as part of the confirmation process; however, it failed to do so and is now bound by the Plan and its provisions.

7. Accordingly, Cadence objects to the granting of the Commissioner's Limited Objection to the extent that it tries to seek payment of ad valorem taxes in contravention of the confirmed Plan.

This 24th day of April, 2019.

JAMES-BATES-BRANNAN-GROOVER-LLP

/s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
3399 Peachtree Rd, NE, Suite 1700
Atlanta, Georgia 30326
(404)997-6020
(404)997-6021 (fax)
bboone@jamesbatesllp.com
*Attorneys for Cadence Bank, N.A. successor by merger to State Bank and Trust Company*

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | ) CASE NO. 14-50312 wlh |
| | ) Chapter 11 |
| HERMAN E. TALMADGE, JR., | ) |
| | ) |
| Debtor. | ) |
| | ) |

**THIRD AMENDMENT TO
"TRUSTEE'S PLAN OF REORGANIZATION FOR THE DEBTOR'S
BANKRUPTCY ESTATE UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE DATED MAY 1, 2018" [ECF NO. 266],
AS AMENDED [ECF NOS. 294, 310]**

**COMES NOW** J. Michael Levengood, Trustee of the estate of deceased Debtor, Herman E. Talmadge, Jr. ("Trustee Levengood" or the "Trustee"), and files this "Third Amendment to 'Trustee's Plan of Reorganization for the Debtor's Bankruptcy Estate Under Chapter 11 of the Bankruptcy Code Dated May 1, 2018' [ECF No. 266], as Amended [ECF Nos. 294, 310]" ("Second Amendment") as follows:

1.

Article III, Section 3.6 "Class 6 Claim: State Bank Secured Claim" in Trustee's May 1, 2018 Plan of Reorganization, as Amended [ECF Nos. 266, 294, 310] is deleted in its entirety. In lieu thereof, Trustee Levengood substitutes the

following new Article III, Section 3.6 denominated "Class 6 Claim: State Bank Allowed Secured Claim" which substitution is set forth below in its entirety:

> **Class 6 Claim: State Bank Allowed Secured Claim.** After Trustee Levengood filed his Plan of Reorganization on May 1, 2018 [ECF 266] and filed the First Amendment thereto on July 23, 2018 [ECF 294] this Court entered its July 24, 2018 "Order Granting Trustee's Motion for Approval of Compromise and Settlement of Amount of Allowed Claim of State Bank and Trust Company Pursuant to Fed. R. Bankr. P. 9019" [ECF 296], which Order was amended and supplemented by Order entered August 3, 2018, *i.e.*, "Supplemental Order Granting Trustee's Motion for Approval of Compromise and Settlement of Amount of Allowed Claim of State Bank and Trust Company Pursuant to Fed. R. Bankr. P. 9019" [ECF 300] (collectively, "Court's Trustee/State Bank Approved Settlement Order, as Supplemented"). On consent of the Trustee, counsel for the four member Talmadge Alliance[1], and counsel for State Bank and Trust Company to the Court's Settlement Approval Order, as Supplemented [ECF 296, 300], the Court specifically determined and ordered: "State Bank is allowed a secured claim in the amount of $1,325,000.00." [Supplemental Order, ECF 300, p. 3, ¶ 2.] For all purposes of this Plan of Reorganization, as Amended, the State Bank Allowed Secured Claim is $1,325,000.00.

2.

Article III, Section 3.7 "Class 7 Claim: State Bank Unsecured Deficiency Claim" in Trustee's May 1, 2018 Plan of Reorganization, as Amended [ECF Nos. 266, 294, 310] is deleted in its entirety. In lieu thereof, Trustee Levengood substitutes the following new Article III, Section 3.7 denominated **"Class 7 Claim:**

---

[1] The four members of the Talmadge Alliance are the following brothers and sister who are four of six children of deceased Debtor Herman E. Talmadge, Jr.: Herman E. Talmadge, III; William Murphy Talmadge; Ramsay Morrison Talmadge; Katherine Merrit Talmadge.

2

**State Bank Allowed Unsecured Deficiency Claim and Unsecured Post-Petition Interest Claim"** which substituted Article III, Section 3.7 is set forth below in its entirety:

### 3.7 Class 7 Claim: State Bank Allowed Unsecured Deficiency Claim and Unsecured Post-Petition Interest Claim.

**A.    Class 7A State Bank Allowed Unsecured Deficiency Claim.** After Trustee Levengood filed his Plan of Reorganization on May 1, 2018 [ECF 266] and filed the First Amendment thereto on July 23, 2018 [ECF 294] this Court entered its "Order Granting Trustee's Motion for Approval of Compromise and Settlement of Amount of Allowed Claim of State Bank and Trust Company Pursuant to Fed. R. Bankr. P. 9019" [ECF 296], which Order was amended and supplemented by Order entered August 3, 2018, *i.e.*, "Supplemental Order Granting Trustee's Motion for Approval of Compromise and Settlement of Amount of Allowed Claim of State Bank and Trust Company Pursuant to Fed. R. Bankr. P. 9019" [ECF 300] (collectively, "Court's Trustee/State Bank Settlement Order, as Supplemented"). On consent of the Trustee, counsel for the Talmadge Alliance, and counsel for State Bank and Trust Company to the Court's Settlement Approval Order, as Supplemented [ECF 296, 300], the Court specifically determined and ordered: "State Bank is allowed an additional unsecured claim in the amount of $542,616.03." [Supplemental Order, ECF 300, p. 3, ¶ 3.] For all purposes of this Plan of Reorganization, as Amended, the State Bank Allowed Unsecured Claim is $542,616.03.

**B.    Class 7B Claim: State Bank Unsecured, Contingent, and Unliquidated Post-Petition Interest Claim.** Because State Bank has been determined to be an undersecured creditor under Section 506 of the Code, State Bank is not entitled to post-petition interest on any portion of its undersecured Class 6 State Bank Allowed Secured Claim, or its Class 7A State Bank Allowed Unsecured Deficiency Claim, except as limited by conditions and contingencies as follows:
    (i)    State Bank is not entitled to determination of a dollar amount of post-petition interest at this stage of this Chapter 11 Case

and some of such possible post-petition interest is unmatured and not computable for future periods because the dollar amounts on which post-petition interest may accrue will change in unknown amounts on unknown future dates;

(ii)   State Bank, like other unsecured creditors, is not entitled to payment of post-petition interest in any amount until all allowed secured and unsecured claims are paid, including but not limited to State Bank's Class 6 $1,325,000.00 Allowed Secured Claim and State Bank's Class 7A $542,616.03 Allowed Unsecured Deficiency Claim [Supplemental Order, ECF 300, p. 3, ¶ 4];

(iii)   payment of post-petition interest on the State Bank Class 6 Allowed Secured Claim and the Class 7A Allowed Unsecured Deficiency Claim must be made pro rata in relation to payment of post-petition interest, to the extent due under this Plan of Reorganization, as Amended, on all other allowed unsecured claims [*Id.*];

(iv)   the source of payment of post-petition interest as set forth above will be liquidation of any assets remaining in Debtor's Estate after payment of all allowed secured and unsecured claims [*Id*];

(v)   to the extent post-petition interest is paid to State Bank after application of the above conditions and after satisfaction of above contingencies, the amount of interest shall be computed as follows:

(a)   amount on which interest is computed: interest shall be determined by applying the interest rates set forth below to the daily outstanding balance on the present $1,382,167.43 principal amount of the Class 6 Allowed Secured State Bank Claim and the Class 7A Allowed Unsecured Deficiency State Bank Claim [*Id.*]; and

(b)   rate of interest: *from January 6, 2014 through June 1, 2018*, the interest rate on the $1,382,167.43 principal balance outstanding on the total of the State Bank Class 6 Allowed Secured Claim and the State Bank Class 7A Allowed Unsecured Deficiency Claim shall be computed at the rate of 6.25% per annum (*i.e.*, totaling $385,855.07); *from June 2, 2018 through the Consummation Date*, interest rate on the $1,382,167.43 principal balance outstanding on the total of the State Bank Class 6 Allowed Secured Claim and the State Bank Class 7A Allowed Unsecured Deficiency Claim shall be computed at 6.25 % per annum (*i.e.*, totaling an interest amount equal to the daily per diem rate of $239.96 multiplied by the number of days

4

elapsed between June 2, 2018 and the Consummation Date); *commencing the day after the Consummation Date*, interest shall be computed at 5 % per annum on the then outstanding principal balance on the State Bank Class 6 Allowed Secured Claim and the State Bank Class 7A Allowed Unsecured Deficiency Claim (*i.e.*, totaling an interest amount equal to the daily per diem rate multiplied by the number of days elapsed between the Consummation Date until such the date when both Class 6 Allowed Secured State Bank Claim and the Class 7A Allowed Unsecured Deficiency State Bank Claim have been paid in full). [*Id.* at pp. 3-4, ¶ 4.]

3.

Article IV is amended by adding Article IV, Section 4.4 "Post-Petition Consent Order Timber Loan Claim by the Talmadge Alliance." This newly added paragraph provides as follows:

**4.4** **Post-Petition Consent Order Timber Loan Claim by Talmadge Alliance.**

Pursuant to entry of a post-Petition "Order on Trustee's Consent Motion for Authority to Borrow Funds" entered March 14, 2018 [ECF 260] ("Post-Petition Consent Timber Loan Order") with the Talmadge Alliance, the Trustee entered into a post-Petition timber loan arrangement. Pursuant to the Post-Petition Consent Timber Loan Order the Trustee and the Talmadge Alliance agreed that the Talmadge Alliance would loan up to $140,050.00 to the Trustee and that the loan would be secured by a lien against timber on three separate parcels of real property owned one hundred percent by deceased Debtor Herman E. Talmadge, Jr. [Post-Petition Consent Timber Loan Order, ECF 260, ¶ F.] The terms of the Post-Petition Timber Loan made by the Talmadge Alliance to the Trustee are specifically set out in the Post-Petition Consent Timber Loan Order [ECF 260] and related post-Petition documents. The Claims by the Talmadge Alliance pursuant to the Post-Petition Consent Timber Loan Order and documents executed by the Trustee in connection therewith,

5

are not pre-Petition claims. This post-Petition claim by the Talmadge Alliance related to the post-Petition timber loan cannot be impaired and is not subject to reorganization. The Trustee will perform the Trustee's obligations under the Post-Petition Consent Timber Loan Order [ECF 260] and related documents executed in connection therewith; likewise, the Talmadge Alliance retains all of its rights and entitlements under the Post-Petition Consent Timber Loan Order [ECF 260] and documents executed in connection therewith.

4.

Article V, Section 5.2 "Class 5 Claim: Timber Secured Claim" in Trustee's May 1, 2018 Plan of Reorganization, as Amended [ECF 266, 294], is deleted in its entirety. In lieu thereof, Trustee Levengood substitutes the following:

**5.2.    This section is reserved.**

5.

The following Sections are deleted in their entirety: (i) Article V, Section 5.3.A "Settlement Alternative" and 5.3.B "Alternative Cram-Down Treatment (Marketing and Sale of 121 Acre Tract with application of a portion of sale proceeds to State Bank Claim)"; and (ii) Article V, Section 5.4 "Class 7 Claim: State Bank Unsecured Deficiency Claim". In lieu thereof, Trustee Levengood substitutes the following new Sections:

**5.3.A** <u>**Settlement Treatment: (Marketing and Sale of the 121 Acre Tract by Talmadge Alliance and Trustee Levengood With Application of Net Sale Proceeds to Pay Closing Expenses, and Satisfaction of Existing Monetary Encumbrances and Then Distribute Remaining Net Proceeds First to Payment**</u>

**of the Class 6 State Bank Allowed Secured Claim, Second to Payment of the Class 7A State Bank Allowed Unsecured Deficiency Claim, and Third Any Remaining Net Proceeds to the Owners).**

i) **Private Sale Marketing for 90-Day Period Following Consummation Date.**

For the 90-day period after the Consummation Date, the Talmadge Alliance and the Trustee shall proceed with the marketing and sale of all or any portions of the 121 Acre Tract at a price agreed by the Talmadge Alliance and ultimately approved by the Court to the extent necessary. Any sale of all or any part of the 121 Acre Tract during the 90-day period following the Consummation Date shall be sold free and clear and liens, claims, and encumbrances and any such liens, claims, and/or encumbrances shall attach to net proceeds of sale after payment of closing costs. In the event that any owner disagrees with such private sale of all or part of the 121 Acre Tract during the 90-day post-Consummation Date period, the Trustee and the Talmadge Alliance shall seek an order approving such sale after application of 11 U.S.C. § 363(h). Sale proceeds resulting from a private sale of all or any portion of the 121 Acre Tract will be distributed in the manner set forth in Sections 5.3.C, 5.3.D, 5.3.E, and 5.3.F below.

ii) **Auction of the 121 Acre Tract.**

If, after 90 days from the Consummation Date, (a) the Class 6 State Bank Allowed Secured Claim and the Class 7A State Bank Allowed Unsecured Deficiency Claim have not been paid in full from the above referenced private sale of all or portions of the 121 Acre Tract or some other source, and (b) all or portions of the 121 Acre Tract continue to be owned by Trustee/deceased Debtor Herman E. Talmadge, Jr., Talmadge Alliance, and Margaret Talmadge/Tyler Talmadge, any remaining unsold portion of the 121 Acre Tract shall be sold at auction free and clear of liens pursuant to the procedure below.

The Trustee and the Talmadge Alliance shall retain a reputable auctioneer familiar and experienced in auctioning property similar to

the 121 Acre Tract, which auctioneer will commit to advertise and publicize the auction of the 121 Acre Tract in a commercially reasonably way to generate interest in sale of the property. The public notice and advertisement of auction shall proceed for not less than 45 days preceding the auction of the 121 Acre Tract. Subject to Court approval, the Trustee and the Talmadge Alliance shall agree to select Hudson & Marshall Auction Company, or some other auction company mutually agreeable to the Trustee and the Talmadge Alliance. If for whatever reason, Hudson & Marshall becomes unable or unwilling to serve as auctioneer, and the Trustee and the Talmadge Alliance are not able to agree on a substitute auctioneer, the Trustee and the Talmadge Alliance shall be entitled to submit proposed auctioneers to the Court whereupon the Court shall appoint an auctioneer after notice to both the Trustee and the Talmadge Alliance, and after a hearing conducted on notice. The auction of the 121 Acre Tract shall occur within 60 days from the end of the post-Consummation Date 90-day period, but not less than 50 days after expiration of the post-Consummation Date 90-day period because of the necessity of 45 days public notice and advertising. The auction shall be conducted respecting the 121 Acre Tract as a whole, and also in various portions as determined by the Talmadge Alliance. The closing of all sales of all or all portions of the 121 Acre Tract shall occur within 30 days from the conclusion of the auction. The auction of the 121 Acre Tract shall be advertised as an auction free and clear of liens, and the title delivered to the purchaser at closing shall be free and clear of liens. The proceeds of sale of the 121 Acre Tract or all the portions of the 121 Acre Tract shall be distributed as set out in Sections 5.3.B, 5.3.C, 5.3.D, and 5.3.E. below.

**5.3.B** **First Level Distribution: Payment of Existing Liens and Encumbrances Necessary to Enable Delivery of Good and Marketable Title.**

As set forth above, a private sale under Section 5.3.A(i) or a sale by public auction under Section 5.3.A(ii) will be a sale free and clear of liens and encumbrances; provided however, any existing liens and encumbrances will attach to proceeds of sale. If the 121 Acre Tract is sold in various portions or subdivisions, liens and encumbrances will attach to proceeds of sale until such time as gross proceeds from sales

of portions of the 121 Acre Tract exceed cost of sale and amount of liens and encumbrances. After sale of portions of the 121 Acre Tract have produced sales proceeds which exceed closing costs and the dollar amount of existing liens and encumbrances, additional sales of portions of the 121 Acre Tract will not be subject to attachment of liens to proceeds of sale. If the entire 121 Acre Tract is sold by auction sale, liens and encumbrances will attach to the entire proceeds of sale, pending distribution. The first level of distribution of sales proceeds will be to: (i) costs of closing including auctioneer commissions, fees, and costs reimbursements, as specified by contract and approved by the Court; (ii) payment of ad valorem taxes specifically assessed against the 121 Acre Tract, regardless of whether the ad valorem taxes are secured because of tax levies or filing of tax liens, or whether the ad valorem tax claims are priority tax claims or ad valorem tax claims arising during the administration of Debtor's case; (iii) Internal Revenue Service tax lien claim against Talmadge Alliance member Herman E. Talmadge, III; provided, however, that unless the Partitioning Children subsequently agree, their share of the Net Proceeds of the sale of any portion of the 121 Acre Tract shall not be charged with payment of item (iii) above. In the event of dispute between owners of the 121 Acre Tract and the holder of any lien or encumbrance, this Court shall adjudicate the dispute and enter orders specifying the dollar amount required to be paid to release any disputed liens and encumbrances on property sold at private sale during the 90-day post-Consummation Date period, or sold by public auction.

### 5.3.C Second Level Distribution: Payment on Class 6 State Bank Allowed Secured Claim.

After payment of first level of distributions specified in Section 5.3.B above, all remaining sale proceeds shall next be applied to the Class 6 State Bank Allowed Secured Claim in the amount of $1,325,000 which payments shall be the second level of distribution. In the event the Class 6 State Bank Allowed Secured Claim is paid in full, the State Bank Class 6 Allowed Secured Claim shall be satisfied and extinguished. The State Bank Allowed Unsecured Post-Petition Interest Claim shall remain a valid claim in the Case which shall be

calculated and paid pursuant to the terms of this Plan of Reorganization, as Amended.

### 5.3.D Third Level Distribution: Payments on Class 7A State Bank Allowed Unsecured Deficiency Claim.

To the extent sale proceeds remain after payments of amounts specified in Sections 5.3.B and 5.3.C above, any remaining sale proceeds shall be applied as a third level of distribution, to payment on the Class 7A State Bank Allowed Unsecured Deficiency Claim existing in the amount of $542,616.03; provided, however, that unless the Partitioning Children subsequently agree, their share of the Net Proceeds of the sale of any portion of the 121 Acre Tract shall not be charged with payment of the Class 7A State Bank Allowed Unsecured Deficiency Claim. The State Bank Allowed Unsecured Post-Petition Interest Claim shall remain a valid claim in the Case which shall be calculated and paid pursuant to the terms of this Plan of Reorganization, as Amended.

### 5.3.E Fourth Level Distribution: Remaining Proceeds Paid to Owners of the 121 Acre Tract.

In the event sales proceeds of the 121 Acre Tract remain after payments required by Sections 5.3.B, 5.3.C, and 5.3.D as set forth above, any remaining sales proceeds shall be paid to owners in accordance with their ownership interest. Payments shall be made to owners in the amounts agreed or determined by Court order in the event of dispute. Provided however, the dollar amount of payments to satisfy Internal Revenue Service lien claims against Talmadge Alliance member Herman E. Talmadge, III as allowed in Section 5.3.B above shall be a credit against and an offset to any distributions which would otherwise be made to Herman E. Talmadge, III, up to the dollar amount paid in satisfaction of Internal Revenue Service liens on the 121 Acre Tract related to claims against Herman E. Talmadge, III.

**5.4** **Payment of Any Portion of the Class 6 State Bank Allowed $1,325,000 Secured Claim or Class 7A State Bank Allowed Unsecured Deficiency Claim Remaining Unpaid After Payments Made to State Bank Pursuant to Above Sections 5.3.A Through 5.3.D.**

If amounts remain due to State Bank on the Class 6 State Bank Allowed $1,325,000 Secured Claim or the State Bank Class 7A Allowed $542,616.03 Unsecured Deficiency Claim after all payments made to State Bank pursuant to above Sections 5.3.B through 5.3.D, the remaining amounts due to State Bank shall be paid pursuant to the following terms and conditions:

i) If any amounts remain unpaid on the State Bank Class 6 Allowed $1,325,000 Secured Claim or the State Bank Class 7A Allowed $542,616.03 Unsecured Deficiency Claim, the Maturity Date of those unpaid claims shall be extended for 180 days from the last payment made to State Bank pursuant to the payments required to be made to State Bank under Sections 5.3.B through 5.3.D ("Extended Maturity Date").

ii) In the event any balance remains due and unpaid at midnight of the Extended Maturity Date on the State Bank Class 6 Allowed $1,325,000 Secured Claim, State Bank shall be free to exercise all remedies available under state law including foreclosure of the 100 Acre Home Place Tract pursuant to its Security Deed. However, any proceeds from foreclosure on all or any part of the 100 Acre Home Place Tract may only be applied to payment of amounts unpaid on the State Bank Class 6 Allowed $1,325,000 Secured Claim. All remaining proceeds of such foreclosure shall be paid to the Trustee who shall, after segregating the estate's allocated portion of remaining proceeds for distribution under the terms of the Plan of Reorganization, as Amended, receive such remaining funds to be held in Trust for disbursements to the Trustee respecting rights of deceased Debtor Herman E. Talmadge, Jr. and for disbursements to non-Debtor owners in accordance with their ownership interests.

11

**5.5 Payment of Any Portion of the Class 7A State Bank Allowed Unsecured Deficiency Claim Remaining Unpaid After Payments Made to State Bank Pursuant to Above Section 5.3.D.**

If amounts remain due to State Bank on the State Bank Class 7A Allowed $542,616.03 Unsecured Deficiency Claim after all payments made to State Bank pursuant to above Section 5.3.D, the remaining amounts due to State Bank on the Extended Maturity Date shall be paid pursuant to the following terms and conditions:

State Bank shall receive four equal payments beginning no later than the first month anniversary of the date of receipt by the Trustee of remaining proceeds after completion of the foreclosure in accordance with Section 5.4 above and continuing every six months thereafter until the twenty four month anniversary of the Extended Maturity Date.

6.

Article IX, in Trustee's May 1, 2018 Plan of Reorganization, as Amended [ECF Nos. 266, 294, 310], is amended by adding a new paragraph Article IX (14) which provides as follows:

(14) Notwithstanding anything to the contrary herein, the Trustee retains and is granted the right to make distributions on allowed claims in the priority as provided for in this Plan of Reorganization, as Amended, sooner than as provided for in the Plan of Reorganization, as Amended, should the Trustee recover and obtain liquidated assets in amounts that allow such payments to be made sooner.

This 19th day of September, 2018.

                        **BANKRUPTCY ESTATE OF HERMAN E.
TALMADGE, JR., DECEASED**

              By:   */s/ J. Michael Levengood, Trustee*
                      J. MICHAEL LEVENGOOD,
                      CHAPTER 11 TRUSTEE

*/s/ James C. Jodecke, Jr.*
THOMAS J. ANDERSEN
*Georgia Bar No. 016250*
JAMES C. JOEDECKE, JR.
*Georgia Bar No. 391885*
*Counsel for J. Michael Levengood, Trustee*

ANDERSEN TATE & CARR, P.C.
One Sugarloaf Center, Suite 4000
1960 Satellite Boulevard
Duluth, Georgia 30097
(770) 822-0900
(770) 822-9680 (facsimile)
jjoedecke@atclawfirm.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HERMAN E. TALMADGE, JR. | ) | CASE NO. 14-50312-wlh |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served true and correct copies of the foregoing pleading by filing same with the CM/ECF electronic-filing system and depositing same in the United States mail, with adequate first class postage affixed thereon, properly addressed to the parties on the service list as follows:

*See Attached Service List.*

This 24th day of April, 2019.

/s/ J. William Boone
J. William Boone
Georgia Bar No. 067856
3399 Peachtree Rd, NE, Suite 1700
Atlanta, Georgia 30326
(404)997-6020
(404)997-6021 (fax)
bboone@jamesbatesllp.com
*Attorneys for Cadence Bank, N.A. successor by merger to State Bank and Trust Company*

## Service List

James H. Morawetz, Assistant Trustee
Office of the United States Trustee
Suite 362, Richard B Russell Building
75 Spring Street, SW
Atlanta, GA 30303

James C. Jodecke, Jr.
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
Suite 4000
1960 Satellite Blvd
Duluth, GA 30097

Peter C. Ensign
Ensign Law
6139 Preservation Dr, Suite 2
Chattanooga, TN 37416

James L. Paul
Chamberlain, Hrdlicka, White et al
46th Floor
191 Peachtree Street NE
Atlanta, GA 30303-1410

Joseph Chad Brannen, Esq.
7147 Jonesboro Rd
Suite G
Morrow, GA 30260

Nathan W. Wood
McGuire Woods, LLP
1230 Peachtree Street, NE
Suite 2100
Atlanta, GA 30309

J. Michael Levengood
Chapter 11 Trustee
Law Office of J. Michael Levengood, LLC
150 S. Perry Street, Suite 208
Lawrenceville, GA 30046